Filed 5/21/26  P. v. Perez

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084834 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD273809) |
| v. | |
| DANIEL RYAN PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Howard H. Shore, Judge.  Conditionally reversed and remanded with directions.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Arlyn Escalante, Deputy Attorney General, for Plaintiff and Respondent.

This matter is before us for a second time. In April 2018, Daniel Ryan Perez pled guilty to four counts of carjacking while on parole (Pen. Code,[1] §§ 215, subd. (a), 1203.085, subd. (b)) and was sentenced to a 28-year prison term. Perez appealed from the judgment, and we remanded with directions for the trial court to determine whether to grant mental health diversion to Perez under section 1001.36, which took effect approximately two weeks before Perez's sentencing. (*People v. Perez* (Jan. 6, 2020, D074332) 2020 WL 57274 [nonpub. opn.] (*Perez I*).)

On remand, the trial court considered and denied Perez's motion for mental health diversion. The trial court then conducted a resentencing hearing consistent with the directions in our previous opinion. (*Perez I, supra*, D074332.) Perez was sentenced to a 25-year prison term.

In this appeal, Perez contends that the trial court erred in denying his motion for mental health diversion. As we will explain, Perez's argument has merit. The trial court applied an improper legal standard when determining whether Perez was eligible for mental health diversion, made findings regarding Perez's eligibility that were not supported by the evidence, and failed to provide a basis for the exercise of its residual discretion to deny Perez's motion. We accordingly conditionally reverse the judgment and remand for further proceedings on Perez's motion for mental health diversion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual background is set forth in our previous opinion, which we restate here.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

"According to the probation officer's report, on September 21, 2017, J. Campos and B. Pena were parked at a trolley station. Campos stood at the open hood of the Volkswagen Jetta while Pena sat in the passenger seat. The car key was in the ignition. Campos closed the hood and moved to the driver's side door when Perez grabbed him and pushed him away from the car. Perez put a hand in his waistband as if to draw a weapon. Campos feared for himself and for Pena. After a struggle for the car keys, Pena exited the car while Perez accelerated away." (*Perez I, supra*, D074332.)

"Perez drove to another parking lot where E. Bermea and C. Ramirez were exiting a taco shop. Perez parked the Volkswagen nearby Bermea's Hyundai Genesis. While Ramirez sat in the passenger seat, Bermea got into the driver's seat and started the engine. Perez approached Bermea and pulled him out of the vehicle. Perez told Bermea, ' "get out," ' and asked him, ' "Are you trying to die tonight?" ' Perez told Ramirez, ' "Get the fuck out," ' and asked him, ' "Are you trying to die tonight?" ' When Perez put the vehicle in reverse, Ramirez jumped out." (*Perez I, supra*, D074332.)

"Perez drove the Hyundai over 110 miles an hour on the interstate highway before crashing into another vehicle. Pena's purse and personal belongings were recovered from the Hyundai, which was totaled. Perez was arrested at the scene before being taken to a hospital for treatment of his injuries from the collision. Perez told police that things were ' "kind of a blur" ' and that he was just released from a Mexican jail where he was incarcerated for being under the influence. He claimed to have walked across the border and said he took the Volkswagen to get back home. He hoped he had not injured anyone. He stated he was driving away when he saw a Maserati[, referring to the Hyundai]. He parked the first car, went to the second, and drove off without a plan. He stated he was fumbling with the

3

radio and ' "jamming through the gears" ' and was unable to stop in time to avoid the collision. He claimed he committed the crimes because of ' "temptation," ' explaining that he saw a car he liked and had to have it, but he admitted ' "[i]t was wrong." ' " (*Perez I, supra*, D074332.)

"An investigation revealed Perez had just been released from a local detention facility; he later agreed he had not been in a Mexican jail as he previously thought." (*Perez I, supra*, D074332.)

Perez pled guilty, on April 18, 2018, to four counts of carjacking while on parole (§§ 215, subd. (a), 1203.085, subd. (b)) and admitted five prison priors (§§ 667.5, subd. (b), 668), one serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and one strike prior (§§ 667, subd. (b)–(i), 1170.12, 668).

The trial court held a sentencing hearing on July 10, 2018. As we explained in our previous opinion, "Perez filed a statement in mitigation and requested that the trial court dismiss his prior strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 . . . . He argued his 'mental state at the time of the offense significantly reduces his culpability' because he suffered from a mental disorder and drug addiction. In an attached exhibit, a forensic psychologist described Perez as 'delusional' and diagnosed him with 'unspecified schizophrenia spectrum and other psychotic disorder' and severe substance abuse disorders. The psychologist opined that Perez's 'mental health and/or substance abuse problems' contributed to his commission of the crimes and recommended treatment." (*Perez I, supra*, D074332.) As we elaborated in a footnote, "Specifically, the psychologist explained: 'There is no question that [Perez] has had serious substance use problems over the years. In fact, because of the severity of his substance use, it is difficult to determine whether or not he should be diagnosed with a

4

primary or secondary psychotic disorder. However, regardless of the etiology of his symptoms, he presents with a number of delusions that interfere with his ability to appropriately interact with his environment. . . . Given that he continues to present with delusional thinking, the undersigned strongly suspects that these symptoms were present at the time of the offense and contributed to his decision to steal the cars.' The psychologist further explained that '[s]pecific treatment interventions will depend on whether [Perez] presents with primary or secondary psychosis (schizophrenia versus substance use),' and that 'more time is needed in order to make the distinction between primary and secondary psychosis.' " (*Ibid*.)

The trial court denied the motion to strike Perez's prior strike, and it sentenced Perez to prison for a term of 28 years.

Perez appealed, and on January 6, 2020, we issued an opinion conditionally reversing the judgment. (*Perez I, supra*, D074332.) As we explained, effective immediately on June 27, 2018 (Stats. 2018, ch. 34, § 37), which was 13 days before Perez's sentencing, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders. We concluded that because Perez's conviction was not yet final, he was retroactively entitled to a hearing to determine whether he should be granted mental health diversion. We remanded with directions for the trial court to hold such a hearing.[2] (*Perez I,*

---

2      In our previous opinion, we observed that there was "a split of authority concerning the retroactivity of section 1001.36." (*Perez I, supra*, D074332.) Subsequently, in *People v. Frahs* (2020) 9 Cal.5th 618, 640 (*Frahs*), our Supreme Court confirmed that the mental health diversion statute should be applied retroactively to cases, like Perez's, that were adjudicated but not yet final when section 1001.36 became effective. Our Supreme Court stated that "[a]lthough applying section 1001.36 retroactively

*supra*, D074332.)  As we explained, if the trial court did not grant mental health diversion it should resentence Perez, taking into account subsequent developments in sentencing law that we addressed in our opinion.  (*Ibid*.)

In deciding to remand for a consideration of mental health diversion, we "reject[ed] the Attorney General's argument that Perez has not made a sufficient showing on all the factors required to seek diversion under section 1001.36." (*Perez I, supra*, D074332.)  We explained that the record indicated that Perez " 'appears to meet at least one of the threshold requirements' of section 1001.36." (*Ibid*.)  Specifically, we observed that the Attorney General "appear[ed] to acknowledge" there was evidence that (1) Perez suffered from a qualifying mental disorder; (2) the mental disorder was a significant factor in the commission of the charged offenses; and (3) in the opinion of a qualified medical expert, Perez's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment.  (*Ibid*.)  In explaining the Attorney General's apparent acknowledgment, we cited the forensic psychologist's report, which "diagnosed Perez with 'unspecified schizophrenia spectrum' and severe substance abuse disorders, opined that Perez's delusional ideations contributed to his commission of the crimes, and recommended treatment." (*Ibid*.)  Nevertheless, we explained that "[o]f

_____

may be somewhat challenging, we remain optimistic that 'the courts involved can implement [it] without undue difficulty' and that "[t]he potential logistical problems identified by the People in providing defendants with a diversion eligibility hearing after conviction, however, do not provide a sufficient basis to deny defendants the benefit of a hearing altogether." (*Frahs*, at pp. 636–637.)

6

course, the trial court will ultimately have the opportunity to consider the sufficiency of Perez's request on remand." (*Perez I, supra*, D074332.)

After remand, defense counsel filed a motion for mental health diversion on October 4, 2022. Among other exhibits, the motion relied on reports from two psychologists who had evaluated Perez.[3] The first report was prepared on December 11, 2017, by Dr. Kristina Malek, Ph.D., and is the report that we discussed in our previous opinion. (*Perez I, supra*, D074332.) The second report was prepared on August 6, 2022, by Dr. Nicole Friedman, Ph.D. After holding a hearing on February 15, 2023, the trial court took the matter under submission and issued a written order on February 17, 2023, which denied Perez's motion for mental health diversion.

On June 5, 2024, the trial court sentenced Perez to a 25-year prison term.

---

[3] On appeal, both Perez and the People moved to file appellate briefs that redacted all of the discussion related to the two psychologists' reports, and to file the unredacted briefs under seal. We conditionally granted those motions as to all three of the parties' briefs, but we deferred final consideration to be decided together with the appeal. We hereby deny Perez's motion to seal as to his opening and reply briefs, and the People's motion to seal as to their respondent's brief. The parties' motions to seal appear to be premised on the alleged "confidential" nature of the documents and the fact that Perez sought an order sealing the psychologists' reports in the trial court. However, we see no indication that the trial court granted the motion to seal. Further, the parties have not moved in this court to have the psychologists' reports filed under seal and have not provided any legal basis that would require us to treat them as confidential documents. Moreover, we note that a significant portion of Dr. Malek's report is already in the public record, as we quoted from it extensively in our previous opinion. Accordingly, we conclude that there is no overriding public interest to support an order sealing the unredacted appellate briefs that refer to the content of the two psychologists' reports. (Cal. Rules of Court, rules 2.550(d), 8.46(d)(6).)

On appeal from the judgment, Perez contends that the trial court erred in denying his motion for mental health diversion.

## II. DISCUSSION

A.    *Applicable Legal Standards*

We begin by setting forth the legal standards that apply in a motion for mental health diversion.

Section 1001.36 states that a trial court "may, in its discretion, and after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant satisfies the eligibility requirements for pretrial diversion set forth in subdivision (b) and the court determines that the defendant is suitable for that diversion under the factors set forth in subdivision (c)." (§ 1001.36, subd. (a).)[4]

The statute identifies two eligibility requirements:  (1) in the last five years the defendant has been diagnosed with or treated for "a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders [(DSM)], including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder and pedophilia" (§ 1001.36, subd. (b)(1)); and (2) "the defendant's mental disorder was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(2)).

Next, the statute identifies four suitability criteria:  (1) a qualified mental health expert has opined that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior

_____

[4]    Defendants charged with certain crimes, such as murder and various sex crimes, are not eligible for mental health diversion.  (§ 1001.36, subd. (d).)

would respond to mental health treatment" (§ 1001.36, subd. (c)(1)); (2) the defendant (if mentally competent) consents to diversion and waives the right to a speedy trial (§ 1001.36, subd. (c)(2)); (3) the defendant (if mentally competent) agrees to comply with treatment as a condition of diversion (§ 1001.36, subd. (c)(2)); and (4) "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community" (§ 1001.36, subd. (c)(4)).

If the defendant is both eligible and suitable, the trial court must also be satisfied "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i).) "This is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892 (*Sarmiento*).)

"Even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion. [Citation] But this 'residual' discretion must be exercised " 'consistent with the principles and purpose of the governing law.' " [Citations.] That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes

of the statute and explain why diversion would not meet those goals." (*Sarmiento, supra*, 98 Cal.App.5th at pp. 892–893.)

We review a trial court's ruling on mental health diversion for abuse of discretion. (*People v. Graham* (2024) 102 Cal.App.5th 787, 795 (*Graham*).) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*)

B.    *The Trial Court's Ruling*

The trial court's written ruling explained that three of the suitability requirements were not at issue. Specifically, the trial court stated, "[I]t appears after hearing oral argument, that certain requirements are not at issue here: [¶] a. Defendant will consent to diversion and waive his right to a speedy trial. [¶] b. Defendant agrees to comply with treatment. [¶] c. Qualified mental health experts opine that defendant will respond to treatment."

However, as the trial court explained, "the People argue that the following statutory requirements have not been met: [¶] a. Defendant does not presently have a qualifying mental illness. [¶] b. Defendant's alleged mental disorder was not a significant factor in the commission of the offense. [¶] c. Defendant poses an unreasonable risk of danger to public safety if treated in the community. [¶] d. Defendant has not proposed an adequate treatment plan." The trial court proceeded to discuss those disputed issues:

> "The statutory provisions for mental health diversion presume a defendant is currently suffering from a mental disorder that played a significant role in the underlying offense. Otherwise, the provisions relating to treatment and successful completion of a program would be irrelevant. In this case, as the

People have pointed out, CDCR records indicate [Perez] has not required mental health treatment while in prison; he failed to meet the criteria for inclusion in the Mental Health Services Delivery System; and there was no exclusionary condition that would prohibit Pelican Bay State Prison-SHU placement. Thus, any possible symptoms he displayed at the time of the offense have abated.

"With regard to the requirement that the diagnosed disorder play a significant role in the commission of the offense, subdivision (b)(2) creates a presumption, based on the diagnosis, that the disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.

"The Court of Appeal opinion in this case, D074332, sets forth the underlying facts of [Perez's] offenses. This court incorporates those facts, at pp. 3–5, into this decision. [Perez] pled guilty to four counts of carjacking while on parole. He described his drug use to a probation officer, but claimed to have no mental health issues. The underlying crimes were violent and potentially life-threatening.

"Based on the facts of the case and a review of Dr. Malek's report of December 11, 2017, this court finds clear and convincing evidence that any mental health disorder was not a significant factor in the commission of the alleged offense.

"Because [Perez] currently does not demonstrate the mental health issues alleged to have existed at the time of the offenses, there is no reason to address the nature of any proposed treatment plan. [Perez] has a lengthy violent criminal history, but it is not clear what his current level of dangerousness is, so this court will not speculate. In any event, because of this court's other conclusions, such speculation is unnecessary. (Paragraph numbering omitted)

Finally the trial court delivered its ruling. "Accordingly, this court finds [Perez] is both ineligible and unsuitable for mental health diversion and, in any event, does not believe granting mental health diversion at this

11

time fulfills the legislative goals described above.  The court will therefore exercise its discretion and deny [Perez's] motion."

As we understand the trial court's ruling, although it only discussed eligibility factors, it concluded that Perez failed to meet both of the eligibility requirements and failed to satisfy at least one (unspecified) suitability criterion.  The trial court also exercised its residual discretion to deny mental health diversion.

C.     *The Trial Court Abused Its Discretion in Ruling That Perez Did Not Meet the Eligibility Requirements For Mental Health Diversion*

We first examine the trial court's ruling that Perez failed to meet the two eligibility requirements.

1.     *The Trial Court's Ruling on the First Eligibility Requirement*

As we have explained, the first eligibility requirement involves a finding that the defendant received a diagnosis of, or treatment for, a qualifying mental disorder in the last five years.  Specifically, the statute describes the requirement as follows:  "The defendant has been diagnosed with a mental disorder as identified in the most recent edition of the [DSM], including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder and pedophilia.  Evidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert.  In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence."  (§ 1001.36, subd. (b)(1).)

As Perez points out, in discussing the first eligibility requirement, the trial court failed to focus on whether Perez received a diagnosis of, or treatment for, a qualifying mental disorder within the last five years. Instead, the trial court reframed the inquiry as whether Perez was "*currently suffering* from a mental disorder that played a significant role in the underlying offense." (Italics added.) Conducting that inquiry, the trial court concluded that because "any possible symptoms [Perez] displayed at the time of the offense have abated," Perez did not satisfy the first eligibility requirement.

The trial court's reframing of the first eligibility requirement was error. Until December 31, 2022, a trial court could grant mental health diversion only if it was "satisfied that the defendant *suffers from* a [qualifying] mental disorder." (Stats. 2022, ch. 47, § 38, italics added.) However, effective January 1, 2023, the statute was amended to reflect a focus on whether the defendant was diagnosed with, or treated for, a qualifying mental health disorder in the last five years.[5] (Stats. 2022, ch. 735 § 1; § 1001.36, subd. (b)(1).) The record establishes that the trial court was aware of the amended statutory language, as it stated at the diversion hearing that it would be applying the amended statute. Moreover, the People submitted a supplemental opposition memorandum prior to the hearing that specifically discussed the amended statutory requirements. Nevertheless, the trial court failed to apply the provisions of the amended statute. Instead, it examined whether Perez was "currently suffering" from a mental disorder. By applying

---

[5] Perez has requested that we take judicial notice of certain legislative history documents for the statutory amendments that took effect in January 1, 2023. We hereby grant the request.

an improper legal standard, the trial court abused its discretion. (*Graham, supra,* 102 Cal.App.5th at p. 795.)

Next, even if the trial court had applied the correct standard, its decision on the first eligibility factor would not have been supported by substantial evidence. The undisputed evidence shows that Perez was diagnosed with, *and* treated for, a qualifying mental health disorder within the last five years. Either circumstance is sufficient to satisfy the first eligibility requirement. (§ 1001.36, subd. (b)(1).)

Dr. Friedman's report, dated August 6, 2022, provides the following diagnoses: "His current DSM-5 Diagnostic Impression: Substance-Induced Psychotic Disorder, remission, in a controlled setting, Stimulant Use disorder (amphetamine), severe, in a controlled environment, Alcohol Use Disorder, severe, in a controlled environment, Opioid Use Disorder, severe, in early remission, in a controlled environment (on maintenance therapy), Antisocial Personality Disorder." The People do not dispute that Substance-Induced Psychotic Disorder, Stimulant Use Disorder, Alcohol Use Disorder, and Opioid Disorder are all qualifying mental disorders recognized in the current edition of the DSM. Dr. Malek's diagnosis substantially overlapped with Dr. Friedman's, although Dr. Malek was unable to determine if Perez's psychosis was caused by substance use or by schizophrenia.[6]

---

[6] Dr. Malek's diagnosis on December 11, 2017, was more than five years prior to the February 15, 2023 hearing, although *within* five years of when Perez filed his motion for mental health diversion on October 4, 2022. Because Dr. Friedman's diagnosis indisputably came within five years of the trial court's ruling, we need not, and do not, decide whether Dr. Malek's diagnosis also falls within the required time period.

With regard to treatment in the last five years, even though the trial court stated that "CDCR records indicate the defendant has not *required* mental health treatment while in prison" (italics added), that statement is misleading, if not inaccurate. Dr. Friedman's report contains excerpts from Perez's medical records from Pelican Bay State Prison that show that, in 2021, to treat his "Opiate Use [D]isorder, severe" and "[M]ethamphetamine [U]se [D]is order, severe," Perez was in a medically assisted treatment program, in which he received buprenorphine-naloxone (otherwise known as suboxone) and clonidine. Further, as defense counsel explained in the trial court (and supported with documentation), after Perez transferred to George Bailey Detention Facility from Pelican Bay State Prison, he continued on a medication regimen, and he obtained a transfer to San Diego Central Jail in 2022 so that he could participate in a new mental health program "designed to provide [cognitive behavioral therapy] based programming to high level incarcerated people while receiving intensive case manager services and other incentives."

Thus, the court abused its discretion in concluding that Perez failed to satisfy the first eligibility requirement.

2. *The Trial Court's Ruling on the Second Eligibility Requirement*

The second eligibility requirement requires a finding that "the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) With respect to this factor, the statute includes a presumption that can only be overcome by clear and convincing evidence. "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or

15

contributing factor to the defendant's involvement in the alleged offense. A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (*Ibid.*)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) Accordingly, in reviewing the trial court's ruling on the second eligibility requirement, "the issue before us is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that [Perez's] mental disorder 'was not a motivating factor, causal factor, or contributing factor to [Perez's] involvement in the alleged offense.' (§ 1001.36, subd. (b)(2).)" (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 402 (*Lacour*).)

In support of its conclusion that "any mental health disorder was not a significant factor in the commission of the alleged offense," the trial court stated it was relying upon Dr. Malek's 2017 report and the underlying facts set forth in our previous opinion (*Perez I, supra*, D074332). The trial court also referred to Perez's statements in a May 2018 interview with a probation officer prior to his first sentencing. As we will explain, none of the items that the trial court relied upon provide substantial evidence from which a reasonable factfinder could have found it highly probable that Perez's mental

16

disorder "was not a motivating factor, causal factor, or contributing factor to [Perez's] involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

First, instead of providing support for a finding that Perez's actions were not influenced by his mental disorder, Dr. Malek's report states that the contrary is true. Dr. Malek concluded that Perez was suffering from psychotic symptoms and delusions that were either due to a primary psychosis based on schizophrenia or a secondary psychosis induced by his use of substances. Dr. Malek explained, "regardless of the etiology of his symptoms, he presents with a number of delusions that interfere with his ability to appropriately interact with his environment. . . . In Mr. Perez's particular case, he strongly believes that he was given a card that allowed him to take the vehicles and that he is currently being tested by God. Furthermore, he does not respond to any reality testing. Given that he continues to present with delusional thinking, *the undersigned strongly suspects that these symptoms were present at the time of the offense and contributed to his decision to steal the cars.*" (Italics added.)

The details set forth in Dr. Malek's report are fully consistent with her opinion that Perez's psychosis and delusions contributed to his commission of the carjackings. During Dr. Malek's interview with Perez almost two months after the carjackings, he was still delusional.[7] According to Dr. Malek, Perez

---

[7]    As Dr. Malek explained, "Despite Mr. Perez's assertion that he does not have any mental health problems, he presented with a number of persecutory, referential, grandiose, and religious delusions (fixed false beliefs). For example, he believed that he was gassed at the jail, that he is not actually in San Diego, that the people in jail are 'just actors,' that the televisions in jail are broadcasting signs and propaganda, and that God has put him in jail and is giving him tests that he must complete. He also discussed how people in jail and in the hospital were actually family members and friends who were somehow able to 'morph' into different people

17

provided her with the following description of the carjackings: "[H]e stated that it was the 'perfect setup.' He explained that the police left a card in his wallet that allowed him to take cars and other items. Specifically, he needed to tap the card twice on whatever he wanted to take. In this particular case, he needed to tap the card on the cars. When describing the first carjacking, he explained that both of the car doors were open at the time. . . . He stated, 'It was all a setup.' In order to take the car, he tapped the roof of the car and got in. He explained, 'The people let me leave.' He later stated that he 'pushed the guy out.' Mr. Perez then began to discuss the car accident that occurred after the second carjacking. He stated, 'It was fake. It looked like a play. All of a sudden, the police and ambulance were there.' He further went on to report that the paramedics who arrived on scene were actually his brother's friends." Perez then described numerous delusions during his stay in the hospital after the carjacking.

Based on the above, we find no substantial evidence in Dr. Malek's report that Perez's mental disorder played no motivating, causal or contributing role in the carjackings.

Next, the facts set forth in our previous opinion (*Perez I, supra*, D074332) also provide no support the trial court's conclusion that Perez's

---

(e.g., his girlfriend morphed into the hospital nurse). He also spent a great deal of time describing how places seemed empty. For example, stores in San Diego seemed to be closed and people were not out on the streets. He explained that San Diego looked like a ghost town. Moreover, he repeatedly described how he was taken to the El Cajon Courthouse but that it looked nothing like El Cajon or the courthouse. He believed that there was no way he ever went to that courthouse. Unfortunately, similar to many other individuals who present with delusional thinking, he did not respond to reality testing."

18

crimes were unrelated to his mental disorder. Our opinion described Perez's delusional thinking while committing the crimes, including that he had just been released from a Mexican jail and that the Hyundai was a Maserati. (*Ibid.*) More importantly, we described Dr. Malek's opinion that "Perez's delusional ideations contributed to his commission of the crimes," and we observed that, based on Dr. Malek's report, the Attorney General "appear[ed] to acknowledge" that Perez's mental disorder was a significant factor in the commission of the charged offenses. (*Ibid.*)[8]

Finally, Perez's statements to the probation officer in May 2018 do not provide substantial evidence to support the trial court's conclusion that Perez's mental health disorder played no role in his crimes. As the trial court summarized Perez's statements to the probation officer, Perez "described his drug use . . . , but claimed to have no mental health issues." That is not an accurate summary. In fact, when speaking to the probation officer in May 2018, Perez described at length the mental health problems he was having during the carjackings. As the probation officer stated, "The defendant said he was 'hallucinating and delusional' and he was 'totally out of (his) mind' when he committed these crimes. . . . [¶] . . . The defendant said he 'did not know what was going on' and he was 'completely delusional.' The defendant thought he had been in jail in Mexico. [¶] The defendant said the carjackings

---

[8] While discussing whether Perez's mental disorder was a significant factor in his commission of the crimes, the trial court stated that "[t]he underlying crimes were violent and potentially life-threatening," which the trial court apparently concluded based on the facts set forth in our prior opinion. But the description of Perez's conduct as violent has no logical connection to whether Perez's conduct was influenced by his mental disorder, as a person suffering from psychosis is fully capable of violent conduct.

were so odd, he 'felt like (he) was in a video game.' He was 'completely out of (his) mind.' . . . [¶] The defendant said he was so delusional that he can only remember 'bits and pieces' of the incident. He read the discovery, and he had talked 'crazy' to the detective. He said he was 'working for God' and he had been jailed in Mexico. The 'whole thing was bizarre.' [¶] The defendant said it took 'over a month' for the hallucinating and the delusions to stop. At the time of the carjackings, he 'felt like (he) was in a dream state' and it 'seemed fake' to him. He was 'so delusional' he had a trolley pass and he thought he could tap it on the roof of a car and take the car. [¶] The defendant had 'no idea' where he was driving. He had 'no idea' where he was at. The defendant said he had 'no reason' to take someone's vehicle. He had a place to stay, work and a license, there was 'no reason' for him to do these crimes. [¶] The defendant wants the Court to take into consideration that he was delusional from withdrawing from methadone. The hallucinations were 'scary' for him. His family was concerned because he was 'talking crazy' to them in jail. It took a month for him to start talking normal. It took him two months to stop hallucinating that he saw people, could talk to people who were not there, and stop[ped] seeing 'trails' that were not there."

In sum, none of the evidence that the trial court purported to rely upon for its analysis of the second eligibility factor provides substantial evidence that Perez's mental disorder 'was not a motivating factor, causal factor, or contributing factor to [Perez's] involvement in the alleged offense.' (§ 1001.36, subd. (b)(2).)"

Focusing on evidence that the trial court did *not* specifically identify in its order, the People argue that although Perez "made delusional statements after committing the carjacking, there was substantial evidence that [Perez] was merely acting in conformance to his prior behaviors and prior crimes,

20

and that his behavior was primarily caused by his heavy drug use." According to the People, Perez's "actions the night of the carjackings were in conformance with his long criminal history and were not out of the ordinary given his past crimes and conduct."

The People's reference to Perez's heavy drug use is not persuasive to show that Perez's mental disorder played no role in the carjackings, as the mental disorder at issue here is psychosis induced *by substance use*.

The People's reliance on Perez's criminal history is also not persuasive. As we understand the People's argument, they contend that because Perez committed a long list of crimes in the past, when he was apparently not experiencing psychosis, he would have committed the carjackings regardless of his substance-induced psychosis, and thus his psychosis was not a contributing factor. The inference that the People urge us to make is far too speculative to provide substantial evidence for any type of finding, let alone a finding that it is "*highly probable* that [Perez's] mental disorder 'was not a motivating factor, causal factor, or contributing factor to [Perez's] involvement in the alleged offense.' (§ 1001.36, subd. (b)(2).)" (*Lacour, supra*, 110 Cal.App.5th at p. 402, italics added.)

The People also argue that "[t]his court's recitation of the underlying facts of the carjacking show that appellant acted *with purpose* when he threatened and pushed the victims out of their cars." (Italics added.) However, the People provide no basis to conclude that *purposeful* conduct is incompatible with conduct motivated by delusions and hallucinations brought about by psychosis.

Finally, the People point to a statement that Perez made to a detective who interviewed him in the hospital on the night of the carjacking. Specifically, near the end of the interview the detective asked, "So, okay, um,

21

anything else to explain your actions tonight?" Perez replied, "Just temptation man." The detective asked, "Temptation of what?" Perez stated, "I seen a car I liked and I just had to have it. It was wrong." The People point to this statement as substantial evidence that Perez's mental disorder did not motivate, cause or contribute to his crimes.

The argument is unpersuasive because it ignores the entire context in which Perez made those statements. During Perez's interview with the detective, he made numerous statements that showed he was delusional and had no rational explanation for his actions. Early in the interview, the detective asked him, "Why would you do something like that?" Perez stated, "I don't know," and "[m]y mind was just in the wrong place I guess." The detective followed up, referencing Perez's delusional statement that he had just been released from a Mexican jail, and asking, "And then you just decide to steal somebody's car?" Perez replied, "I'm in jail in Mexico, probably on some weird, I don't even know what you want to call it -- something with God." He said, "God was calling for me" and described himself as "[o]ne of God's soldiers." When trying to understand why Perez took the second car (the Hyundai), the detective inquired, "Alright, so you took the car[,] and then why did you then park that car and take another car?" Referring to the Hyundai, Perez answered "[t]emptation" because "[a] Maserati came up." When asked *how* he took the second car, Perez referenced his delusional belief that he could tap on a car to take it, by answering, "Two taps, tossed him out." Accordingly, because Perez made delusional statements throughout the interview, the People are not persuasive in arguing that Perez's statement to the detective that he acted out of "temptation" and "it was wrong" provides substantial evidence that Perez's mental disorder played no role in his commission of the offenses.

In sum, none of the People's arguments point to substantial evidence from which a reasonable factfinder could have found it highly probable that Perez's mental disorder "was not a motivating factor, causal factor, or contributing factor to [Perez's] involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

Based on the foregoing, we conclude that the trial court abused its discretion in ruling that Perez failed to satisfy both of the eligibility requirements for mental health diversion.

D.     *Based on Its Analysis, the Trial Court Erroneously Concluded That Perez Was Not Suitable for Mental Health Diversion*

We next consider the trial court's ruling that Perez was unsuitable for mental health diversion.

According to the trial court, the only one of the four suitability criteria disputed by the People was whether Perez would "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4)). In addressing that issue, the trial court stated, "[Perez] has a lengthy violent criminal history, but it is not clear what his current level of dangerousness is, so this court will not speculate. In any event, because of this court's other conclusions, such speculation is unnecessary." The only reasonable way to understand that statement is that because the court had found Perez ineligible, it elected *not* to make a finding on suitability, i.e., whether Perez would pose a danger to public safety if he was treated in the community under mental health diversion. The People do not attempt to argue otherwise.

Nevertheless, in summing up its analysis at the end of its order, the trial court stated that Perez was "both ineligible *and unsuitable* for mental health diversion." Seizing on this statement, the People contend that the

23

trial court found Perez to be unsuitable for mental health diversion based on the failure of a *different* suitability criterion, and *not* based on the criterion involving public safety. Specifically, the People contend that the trial court concluded Perez failed to show that a mental health expert had opined that "the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) The People explain that because the trial court stated Perez was no longer showing symptoms of a mental health disorder, the trial court must have decided that a mental health expert could not opine that Perez's symptoms would respond to mental health treatment. We find no support for the People's contention in the text of the trial court's order. On the contrary, the trial court stated that "certain requirements are *not* at issue here," including that "[q]ualified mental health experts opine that defendant will respond to treatment." (Italics added.)

Moreover, even if the trial court *had* made the ruling that the People ascribe to it (i.e., that an expert had not opined Perez's symptoms would respond to treatment), such a ruling would have been contrary to Dr. Friedman's report. According to Dr. Friedman, Perez's mental health disorders include "Opioid Use Disorder, severe, in early remission, in a controlled environment (on maintenance therapy)," which is causally related to the "Substance-Induced Psychotic Disorder" that motivated the carjackings. Dr. Friedman stated that "*Mr. Perez's symptoms would respond to substance use treatment.*" (Italics added.) Specifically, Dr. Friedman recommended "Mr. Perez enter a dual-diagnosis treatment program," and "[o]nce in the appropriate program, [Perez] will be evaluated for medication and monitored by a psychiatrist." Dr. Friedman recommended that Perez "enter and complete a thirty to forty-five-day inpatient program, with

24

stepdown to a three-to-six-months in an IOP (dependent upon how he does) and continue outpatient treatment with Dialectical Behavioral Therapy (DBT) for six to nine months, if not longer, contingent upon his successful completion of the therapy program."

In sum, as to the issue of Perez's suitability for mental health diversion, the trial court's *own* discussion establishes that it abused its discretion by concluding that Perez was "unsuitable for mental health diversion." The trial court recognized that the only suitability criterion in dispute was whether Perez would "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community" (§ 1001.36, subd. (c)(4)), but it expressly *declined* to rule on that issue.

E.   *The Trial Court Abused Its Discretion in Exercising Its Residual Discretion Because It Provided No Substantive Explanation*

In addition to stating that Perez was not eligible or suitable for mental health diversion, the trial court stated that it would also exercise its residual discretion to deny the motion.

In exercising that discretion, the trial court provided only a conclusory statement unsupported by explanation. The trial court stated, "[T]his court . . . does not believe granting mental health diversion at this time fulfills the legislative goals described above. The court will therefore exercise its discretion and deny defendant's motion."[9]

---

[9]   Earlier in its order, the trial court identified the legislative goals of the mental health diversion statute as "promoting increased diversion of individuals with mental disorders to mitigate their entry and reentry into the criminal justice system while protecting public safety, as well as providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." That description largely tracks the statutory purpose explicitly set forth in section 1001.35

25

As we have explained, the trial court has residual discretion to deny diversion, even where a defendant meets the eligibility and suitability requirements.  (*Sarmiento, supra*, 98 Cal.App.5th at p. 892.)  However, if the trial court decides to exercise its residual discretion, " 'its statement of reasons should reflect consideration of the underlying purposes of the statute *and explain why diversion would not meet those goals*.' "  (*Id.* at p. 893, italics added; see also *Flareau v. Superior Court of Riverside County* (2026) 118 Cal.App.5th 681, 691 [noting that the trial court improperly failed to explain why diversion would not meet the goals of the diversion program].)  Here, the trial court failed to provide any explanation of why granting mental health diversion to Perez would not meet the statutory goals.  Moreover, because the trial court failed to explain the basis for its ruling, it is possible that the trial court's decision to exercise its residual discretion was incorrectly influenced by its erroneous conclusions and findings regarding the first and second eligibility requirements.

"[R]eviewing courts have consistently made clear that the legislation's aim is for diversion to apply as broadly as possible so as to increase the provision of mental health treatment for the betterment of individuals and society as a whole."  (*People v. Cabalar* (2025) 117 Cal.App.5th 41, 58.)  "A trial court's denial of mental health diversion using its residual discretion should be limited to those situations where the purposes of the statute would not be achieved."  (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 138.)  Here, because the trial court failed to provide any explanation of why granting diversion to Perez would not meet the legislative goals, the trial court abused its discretion in exercising its residual discretion.

F.      *The Appropriate Remedy Is a Remand For Further Proceedings on*
        *Perez's Motion For Mental Health Diversion*

As discussed above, the record establishes that Perez is eligible for mental health diversion because he meets both eligibility requirements. However, the trial court expressly did not consider the suitability criterion of whether Perez would "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)  Further, to the extent it intended to exercise its residual discretion, the trial court abused its discretion in failing to explain its reasons for doing so.

Under those circumstances, the appropriate remedy is to conditionally reverse the judgment and remand for further proceedings on Perez's motion for mental health diversion.  We express no opinion as to whether the trial court should determine that Perez is suitable for diversion or as to how the trial court should exercise its residual discretion.  If the trial court grants the motion, and Perez successfully completes diversion, then the trial court shall dismiss the charges.  (§ 1001.36, subd. (h).)  However, if the court denies the motion for mental health diversion, or if Perez does not successfully complete diversion, then Perez's guilty plea and sentence shall be reinstated.  (See *Frahs, supra*, 9 Cal.5th at pp. 640–641 [setting forth the appropriate appellate disposition when remanding for a retroactive consideration of mental health diversion].)

## III.  DISPOSITION

The judgment is conditionally reversed, and this matter is remanded for further proceedings on Perez's motion for mental health diversion.  If the trial court denies the motion for mental health diversion, or if it grants the motion but Perez does not successfully complete diversion, Perez's guilty plea and sentence shall be reinstated.


KELETY, J.

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

28